AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
JAN 15 2020
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  20MJ0150
One Apple iPhone Model Xs Max Cell Phone, )
IMEI: 357271096173980. )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Secs. 952, 960 | Importation of a Controlled Substance |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Felix Trevino, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  1/15/20

*Judge's signature*

City and state: San Diego, California     Honorable Bernard G. Skomal, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-1

### PROPERTY TO BE SEARCHED

The following property is to be searched:

    Apple Iphone Xs Max phone
    IMEI No. 357271096173980
    Seized as FP&F No. 2019250600120002  ("Target Device 1")

Target Device 1 is currently in the possession of Homeland Security Investigations, 2255 Neils Bohr Ct., San Diego, CA 92154.

## **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for 90 days, beginning on June 22, 2019 through and including September 22, 2019:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960.

# AFFIDAVIT

I, Special Agent Felix Trevino, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

> Apple Iphone Xs Max phone
> IMEI No. 357271096173980
> Seized as FP&F No. 2019250600120002
> ("**Target Device 1**")
>
> Samsung Galaxy Model SM970U phone
> IMEI: 358230100509463
> Seized as FP&F No. 201925060012001
> ("**Target Device 2**")

("**Target Devices**, collectively) as further described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960, as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Defendants Stephanie GONZALEZ and Jorge CABRALES for importing approximately 12.66 kilograms (27.85 pounds) of methamphetamine from Mexico into the United States. *See U.S. v. Jorge CABRALES (1) Stephanie GONZALEZ (2)*, Case No. 19-cr-4228 (S.D. Cal.) at ECF No. 1 (Complaint). The **Target Devices** are currently in the evidence vault located at 2255 Niels Bohr Ct., San Diego, CA 92154.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

1

## BACKGROUND

4. I am a Special Agent with Homeland Security Investigations (HSI) and have been so employed since March 2003. Prior to my employment with HSI, I served as a Special Agent with the United States Customs Service (USCS) since 1998 after serving as a U.S. Border Patrol Agent since 1996. I am currently assigned to the Tunnel Task Force, where my duties include conducting investigations of criminal violations relating to the smuggling and transportation of controlled substances. In the course of my duties in this assignment and in previous assignments, I have participated in more than 150 narcotics-related investigations as a case agent and in supporting roles. Many of those cases resulted in the arrest of persons for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances. I have conducted surveillance and participated in the execution of search warrants in drug trafficking investigations. I have interviewed numerous defendants, witnesses, and informants while conducting drug trafficking investigations. Through those interviews I have gained a working knowledge and insight into the normal operational habits of narcotics traffickers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego, CA international ports of entry.

5. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

7. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

3

e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

8. On September 22, 2019, at approximately 3:50 p.m., defendants GONZALEZ and CABRALES applied for permission to enter the United States at the Otay Mesa Port of Entry. CABRALES was the driver and GONZALEZ was the passenger of a 2020 Toyota Corolla, and were referred for secondary inspection. Customs and Border Protection Officers discovered 25 packages concealed within the gas tank of the vehicle. The packages weighed approximately 12.66 kg (27.85 lbs.), and field-tested positive as methamphetamine. Defendants were subsequently arrested and the **Target Devices** were seized from Defendants' property. California DMV registration documents for the vehicle show that the vehicle is registered to GONZALEZ.

9. Later, agents asked GONZALEZ if she wanted to call her mother and she said yes. GONZALEZ picked up **Target Device 1**, accessed **Target Device 1** by inputting the access code, and retrieved her mother's phone number to place the call from **Target Device 1**. Agents read GONZALEZ her *Miranda* rights, and she agreed to speak to agents without an attorney present. GONZALEZ admitted to being the owner of the vehicle and she denied knowledge of the drugs in her vehicle. GONZALEZ stated that she had gone to Mexico to go to a club in Rosarito, Mexico with her friends. GONZALEZ stated that co-defendant CABRALES drove the vehicle to Mexico because she does not have a valid driver's license. GONZALEZ stated the vehicle was parked in a gated community and that they did not use the vehicle during their stay in Mexico. GONZALEZ stated that she noticed the gas gauge in the car read "full," which she thought was weird because the fuel gauge measured at half tank on arrival in Mexico, and they had not fueled up while they were in Mexico.

10. During the interview, GONZALEZ provided agents the access code to her

phone. GONZALEZ was questioned concerning a contact listed as "Primo" on **Target Device 1**. Initially, she stated that "Primo" is her cousin with whom she intended to visit while in Mexico. But on further questioning, GONZALEZ admitted that "Primo" was not her cousin. GONZALEZ's phone also contained a sent message to a friend with a picture of CABRALES' driver license. GONZALEZ explained that her female friend wanted a picture of the license because there were some trust issues between her friend and CABRALES. Both Defendants met and stayed with the female friend while in Mexico, and met with the friend's uncle for breakfast immediately prior to driving to the border where they were arrested.

11. Later, agents interviewed CABRALES. They read CABRALES his Miranda rights, and he agreed to speak to agents without an attorney present. CABRALES admitted that **Target Device 2** belongs to him but that it is not "connected" and he only uses messaging features such as "SnapChat," utilizing WiFi. CABRALES made arrangements two weeks prior to his arrest at the suggestion of the GONZALEZ'S friend with whom they stayed in Mexico. CABRALES admitted he believed there were drugs in the vehicle. CABRALES expected to get paid $500 by GONZALEZ.

12. In light of the above facts, Defendants' statements, and my own experience and training, there is probable cause to believe that Defendants were using the **Target Devices** to communicate with others to further the importation of illicit narcotics into the United States. Based on these facts, particularly the common use of telephones to facilitate drug trafficking and GONZALEZ's false statement regarding the nature of a phone contact, her use of the phone to send CABRALES' driver license picture to a third party, I believe that Defendants used the **Target Devices** to facilitate the importation of methamphetamine and that the **Target Devices** contain evidence of this criminal activity in the form of recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, pictures and other digital information. I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of the illegal activity committed by Defendants continue to exist on the **Target Devices**.

13. In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on June 22, 2019 through and including September 22, 2019.

## METHODOLOGY

14. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the

21. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachments A-1 and A-2 and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Felix Trevino
Homeland Security Investigations

Subscribed and sworn to before me this _____ day of January, 2020.

Hon. Bernard G. Skomal
United States Magistrate Judge

8